UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MWH INTERNATIONAL, INC.,

                        Plaintiff,

        -against-

INVERSORA MURTEN S.A.,
ENERGOPROJEKT HOLDING COMPANY,
and ENERGOPROJEKT
HIDROINZENJERING CO., LTD,

                       Defendants.
---------------------------------------------------------------X

**OPINION & ORDER**

**11 Civ. 2444 (HB)**

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiff MWH International, Inc. ("MWH") brought this interpleader action pursuant to Federal Rule of Civil Procedure ("FRCP") 22 against defendants Energoprojekt Holding Company ("EP-Holding") and Energoprojekt hidroinzenjering co., ltd ("EP-Hidro") (collectively "Energo") and Inversora Murten S.A. ("Inversora"). MWH has since deposited the disputed funds with the Court and was dismissed from the case. Previously, I denied without prejudice a motion by Energo to dismiss the interpleader complaint and Inversora's answer, and I ordered limited discovery into the relationship among the Energo entities. *See MWH Int'l, Inc. v. Inversora Murten S.A.*, 11 Civ. 2444(HB), 2012 WL 12886 (S.D.N.Y. Jan. 3, 2012). Familiarity with that Opinion will be assumed. Since that time, Inversora amended its answer and added a cross-claim against Energoprojekt Holding a.d. ("EP-Holding a.d."), identifying EP-Holding a.d. as the same entity as, or the successor-in-interest to, EP-Holding. None of the limited discovery has taken place, and I allowed Energo to file the present motion.

EP-Holding a.d. has filed a special appearance and moves to dismiss Inversora's cross-claim due to a lack of personal jurisdiction and inadequate service of process. Additionally, EP-Hidro renews its earlier motion to dismiss and raises the additional arguments that Inversora lacks the capacity to sue and failed to adequately allege EP-Hidro's successor liability for EP-Holding's debts. Finally, an Energo entity (it is unclear which one) argues that the original default judgment (the "1996 judgment") obtained by Inversora in the district court in New Jersey is void because the court there lacked personal jurisdiction over the defendant (it is also unclear

1

to me whether the judgment debtor is EP-Holding or the subsidiary Energoprojekt Holding Guinee). This is all a long-winded way of saying that nothing has happened for seven months.

I have struggled to find an issue that can be meaningfully resolved at this juncture. For the following reasons, and for the same reason as stated in my January Opinion, EP-Holding a.d.'s motion and EP-Hidro's renewed motion are DENIED without prejudice to renew. Let me emphasize, however, that I will consider renewed motions only after the parties can return to me with the ability to adequately address those issues I outline below.

## Discussion

This is an interpleader action to determine EP-Hidro's and Inversora's right to the res. EP-Hidro's claim is obvious and uncontested; EP-Hidro was in a direct contractual relationship with MWH. Inversora's claim, by contrast, is indirect and dependent on the nature of the relationship between EP-Hidro and other Energo affiliates. The interpleader defendants share a long and troubled history that begins sometime in the early nineties and involves countless subsidiaries of companies from around the world. Starting at least with the 1996 judgment in the District of New Jersey, the parties have continued their dispute in multiple courts throughout the country.[1]

### I.    Inversora's Cross-Claim Against EP-Holding a.d.

Inversora amended its answer and included a cross-claim against EP-Holding a.d., an entity that was not named originally. Inversora's cross-claim is a continuation of its claim to the res, which is predicated on the 1996 judgment against EP-Holding, as well as a claim of alter-ego liability and veil piercing against EP-Holding a.d. Because Inversora served MWH with a garnishment subpoena seeking partial satisfaction of the 1996 judgment, which was against EP-Holding and not EP-Holding a.d., the cross-claim against EP-Holding a.d. is "an independent controversy with a new party in an effort to shift liability." *Epperson v. Entm't Express, Inc.*, 242

---

[1] *See, e.g.*, *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co. Ltd.*, 264 F. App'x 13 (D.C. Cir. 2008) (Judges Sentelle, Henderson, and Edwards); *MWH Int'l, Inc. v. Inversora Murten, S.A. et al.*, No. 10-cv-05133-WJM-MF (D.N.J. filed Oct. 5, 2010) (Judge Martini); *Inversora Murten, S.A. v. Energoprojekt Holding Co.*, No. 06-CV-02312-MSK, 2009 WL 179463 (D. Colo. Jan. 22, 2009) (Judge Krieger); *Inversora Murten, S.A. v. Energoprojekt Holding Co.*, 671 F. Supp. 2d 152 (D.D.C. 2009) (Judge Roberts); *Inversora Murten S A v. Energoprojekt Holding Co.*, No. 05-mc-01050-JBM-JAG (C.D. Ill. filed Oct. 27, 2005) (Judge McDade); *Inversora Murten, S.A. v. Energoprojekt Holding Co.*, No. 03-73 (JMF), 2004 WL 5582072 (D.D.C. Aug. 6, 2004) (Judge Facciola); *Energoprojekt Holding A.D. v. Inversora Murten S.A., et al.*, No. 03-cv-01958-LLS (S.D.N.Y. filed Mar. 19, 2003) (Judge Stanton); *Inversora Murten S.A. v. Energoprojekt Holding Co.*, No. 95-cv-05022-JWB (D.N.J. filed Sept. 28, 1995) (Judge Bissell).

F.3d 100, 106 (2d Cir. 2001). While "the Court here has subject matter jurisdiction over [the 1996 judgment] through ancillary jurisdiction to enforce the judgment," *Weininger v. Castro*, 462 F. Supp. 2d 457, 489 (S.D.N.Y. 2006), the more appropriate basis for subject matter jurisdiction over the cross-claim is FRCP 13.

In order for the Court to assert supplemental jurisdiction over the cross-claim against EP-Holding a.d., the claim must "arise[] out of the transaction or occurrence that is the subject matter of the [interpleader] action . . . , or . . . relate[] to any property that is the subject matter of the [interpleader] action." Fed. R. Civ. Pro. 13(g). In interpleader actions, cross-claims are generally permitted "when they are asserted against the common fund or subject of the main action." 6 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1432 (revised 3d ed. 2012). Here, the cross-claim "represents in substance [Inversora]'s claim in the second stage of any interpleader action." *Priority Records, Inc. v. Bridgeport Music, Inc.*, 907 F. Supp. 725, 732 (S.D.N.Y. 1995) (finding supplemental jurisdiction in a statutory interpleader action). A determination of the claimants' rights to the res will necessarily relate to the dispute over the corporate relationship of the Energo entities. The cross-claim is therefore an "integral part of the interpleader action", *id.*, and the Court has supplemental jurisdiction over it.

## II.    Personal Jurisdiction Over EP-Holding a.d.

The relationship of EP-Holding a.d. to this case can be described in at least three different ways: (1) as the alleged alter-ego of EP-Hidro, an interpleader defendant with a competing claim to the res; (2) as the alleged judgment debtor with an interest in EP-Hidro's property, a party that should be joined pursuant to FRCP 19[2] or a party over which the Court has jurisdiction by virtue of EP-Holding a.d.'s corporate relationship with EP-Hidro; or (3) as the alleged successor-in-interest to or alter-ego of EP-Holding,[3] a defendant to Inversora's cross-claim seeking partial

---

[2] The Court views EP-Holding a.d. as a party that should be joined because a determination of the validity of Inversora's claim to the res will necessarily involve scrutiny of the 1996 judgment and the corporate structure of Energo. *See* Charles Alan Wright et al., 7 Fed. Prac. & Proc. Civ. § 1604 (revised 3d ed. 2012) ("[J]oinder will be insisted upon if the action might detrimentally affect a party's or the absentee's ability to protect his property or to prosecute or defend any subsequent litigation in which the absentee might become involved."). However, there is no need to apply the standards of Rule 19 at this time as EP-Holding a.d. may become a part of the suit through other means.

[3] Inversora initially pleaded that *EP-Holding*, the original judgment debtor, was either the alter-ego of EP-Hidro or that it had an interest in EP-Hidro's property.  In its amended answer, Inversora pleads that *EP-Holding a.d.* is either the alter-ego of or successor-in-interest to EP-Holding.

enforcement of the 1996 judgment. As was the case in January, I lack sufficient information to say in precise terms what EP-Holding a.d.'s relationship to this litigation actually is, and I will unfortunately revisit the topic a third time in the near future.

> a.   *EP-Holding a.d. Does Not Fall Within the State's Long-Arm Statute*

Three elements must be met in order for a court to exercise personal jurisdiction over a non-domiciliary defendant. First, the service of process must be procedurally sound and effective. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Second, there must be a statutory basis that confers personal jurisdiction. *Id.* Where the claim does not arise from a federal statute that extends personal jurisdiction through service of process, the long-arm statute of the forum state—in this case New York's long-arm statute N.Y. C.P.L.R. § 302(a)—applies. *Id.* at 59–60. Finally, personal jurisdiction must align with constitutional due process principles. *Id.* at 60.[4] The complainant "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit," *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (internal citations omitted), and "must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). However, "[p]rior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996) (internal citations omitted). In their inquiry, courts will "construe the pleadings and affidavits in the light most favorable to [complainant], resolving all doubts in [its] favor." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

EP-Holding a.d. raises two issues with respect to service: (1) Inversora failed to attempt service of its amended answer and cross-claim on EP-Holding a.d.; and (2) the service of the original interpleader complaint by MWH was invalid. MWH sent its interpleader complaint via FedEx to EP-Holding on or about July 11, 2011. Brooks Decl. Ex. 2 (May 29, 2012). Inversora contends that EP-Holding a.d. was the only business operating from the address at the time the interpleader complaint arrived on July 18, 2011. Inversora Am. Answer ¶¶ 36–38. With respect to the cross-claim, Inversora states that it served EP-Holding a.d. through its counsel when

---

[4] Because New York's long-arm statute is more restrictive in conferring courts with personal jurisdiction over out-of-state defendants than that afforded by constitutional due process principles, if a complainant can meet the long-arm's statutory requirements then the constitutional principles are satisfied. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).

Inversora filed its cross-claim on ECF. Inversora alleges that this method of service is permissible and is supported by both case law and Serbian civil procedure. Inversora points to *KPN B.V. v. Corcyra D.O.O.*, No. 08 CIV. 1549 (JGK), 2009 WL 690119 (S.D.N.Y. Mar. 16, 2009), as support for the proposition that service via ECF was proper. In *KPN*, Plaintiffs sought the court's permission pursuant to FRCP 4(f)(3) to serve Defendants through their counsel (the same attorney) after its repeated attempts at service had been thwarted—intentionally, in some instances—by the defendants. The court granted permission. *Id.* at \*2.

The parties dispute the proper means of service under Serbian law, and they even cite completely different laws. It is my understanding that service of process is governed by Chapter 11 of Serbia's Civil Procedure Code.[5] At oral argument, Energo argued that service must be effected through the Serbian courts and must be in Serbian. *See* Tr. at 10:8–24, June 21, 2012. The parties' briefs and my limited understanding of Serbian law at this time provide me with an insufficient basis to decide whether service on EP-Holding a.d. was proper. More importantly, I need not rule now because depending on how EP-Holding a.d. is related to the suit, service on EP-Holding a.d. may be irrelevant or effected by other means.

The question of whether EP-Holding a.d. falls within New York's long-arm statute can be resolved now. That statute confers specific personal jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," commits a tortuous action in or out of the state that causes injury within the state, "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce," or "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a)(1)–(4). The claim at bar must arise from the defendant's conduct. *Id.* § 302(a). "To meet the transacting business element under [§ 302(a)(1)], it must be shown that [the defendant] availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (internal quotation marks omitted). Further, "[t]o determine whether a party has 'transacted business' in New York, courts

---

[5] *See* Republic of Serbia, Civ. P. Code art. 127 (translated 2008), *available at* http://www.mpravde.gov.rs/images/22__civil_procedure_code.pdf ("Documents related to the case are served, as a rule, by mail, but may also be served by a designated person of the court, by a competent municipal body, by a legal entity registered for delivery services, directly in the court premises or in another manner stipulated by a special statute.")

must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir.1999). "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d. Cir 2007) (internal quotation marks omitted).

    Inversora does not allege that EP-Holding a.d. transacted business within the state or committed a tortuous action inside or outside of New York. Instead, Inversora's only allegations of EP-Holding a.d.'s ties to New York are a 2003 complaint filed by EP-Holding a.d. and a Manhattan office operated by EP-Holding—the alleged predecessor-in-interest to EP-Holding a.d.—between 1970 and 1995 (a year before the New Jersey judgment). There is no indication that EP-Holding's pre-1995 New York office had any connection to the New Jersey judgment against EP-Holding or the contract between the Guinee subsidiaries. For the 2003 complaint, New York courts treat the use of local courts by a foreign defendant as a factor in their long-arm analysis. *Compare Accessory Corp. v. Spotless Plastics Pty. Ltd*, No. 05 CIV. 2185 (NRB), 2007 WL 2584963, at *4–5 (S.D.N.Y. Sept. 7, 2007) (noting that valid allegations of foreign corporate parent's use of New York Courts was insufficient for conferring general personal jurisdiction pursuant to CPLR § 301), *and Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 835 n.6 (N.Y. 2007) (noting that because plaintiff's action for a declaratory judgment did not arise from defendant's prior ownership of New York property or past appearances as a defendant in civil suits, these contacts were insufficient for finding personal jurisdiction in the instant case), *with In the Matter of Sayeh R.*, 91 N.Y.2d 306, 319 (1997) (holding that, in addition to other conduct by out-of-state defendant making her subject to New York's long-arm statute, defendant's past, related use of New York's Courts and Police was sufficient to confer personal jurisdiction), *and Kazlow & Kazlow v. A. Goodman & Co., Inc.*, 402 N.Y.S.2d 98, 99 (N.Y. App. 1st Dept. 1977) (holding that a foreign corporation that retained and regularly communicated with local attorneys to prosecute a three-year-long case in New York was later subject to personal jurisdiction pursuant to CPLR § 302 in action an brought by corporation's attorneys to recover fees). Though the 2003 complaint was a motion to vacate the 1996 judgment, because it was voluntarily dismissed before it was litigated I find EP-Holding a.d.'s nine-year-old complaint to be an insufficient basis

standing alone to establish specific personal jurisdiction over EP-Holding a.d. under the New York state long-arm statute.

   b. *Personal Jurisdiction over EP-Holding a.d. Through Other Energo Entities*

   Inversora argues that EP-Holding a.d. is a successor-in-interest to EP-Holding, and EP-Holding is united in interest with EP-Hidro who in turn waived personal jurisdiction. This analysis requires some jurisdictional discovery before it can be decided. The Court is afforded with "broad discretion" when determining whether to grant jurisdictional discovery. *In re Terrorist Attacks on Sept. 11, 2001*, 689 F. Supp. 2d 552, 566 (S.D.N.Y. 2010) (internal citations omitted). "The court may deny such discovery if a plaintiff has failed to make a prima facie showing of jurisdiction over the defendant." *Id.* "A prima facie showing of jurisdiction means that the plaintiffs must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Id.* (internal quotation marks omitted). However, "if [a] plaintiff has not pleaded a prima facie showing of personal jurisdiction, a court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to *fill any holes* in its showing." *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263 (S.D.N.Y. 2005) (internal quotation marks omitted). "The pleadings must indicate, however, that limited discovery is likely to uncover additional facts supporting jurisdiction; a court will not draw argumentative inferences in favor of a plaintiff who has failed to allege even bare facts to support a finding of personal jurisdiction over defendants." *Id.* at 263–64 (internal quotation marks omitted). The discovery that Inversora requires here is largely duplicative with the discovery I ordered in January 2012, provided EP-Holding a.d. is included.

   c. *Consent or Waiver*

   "The personal jurisdiction requirement recognizes and protects an individual liberty interest." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Because the defense is a personal right, it may be obviated by consent or otherwise waived. *Id.* at 703. Inversora cites a First Circuit case, *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991), for the proposition that EP-Holding a.d.'s 2003 suit to vacate the New Jersey default judgment constitutes a submission by EP-Holding a.d. to the jurisdiction of this Court with respect to that dispute. *See id.* ("[The third-party defendant] elected to avail itself of the benefits of the . . . courts *as a plaintiff* [and thereby] surrendered any jurisdictional objections to claims that [the third-party plaintiff] wished to assert against it in consequence of

the same transaction or arising out of the same nucleus of operative facts."). While *Interpole* has not been expressly adopted by Second Circuit courts, I cannot find any reason to believe that its holding is inconsistent with Second Circuit law. *See Gulf Ins. Co. v. Caldor Corp.*, No. 03 CIV. 2894 (LLS), 2006 WL 1586571, at \*4 (S.D.N.Y. June 9, 2006) (noting that *Interpole* did not apply because the past and present claim did not arise from the "same nucleus of operative facts"), *aff'd*, 273 F. App'x 90 (2d Cir. 2008).[6] Energo uses the second motion to dismiss as an opportunity to reintroduce their 2003 argument. As tempting as it may be to decide whether to apply *Interpole* and to determine if EP-Holding a.d. has consented to suit, I need not address that issue because, like so many other issues here, it is subordinate to the question of the relationship among the Energo entities.

## III.    Garnishment of EP-Hidro's Property

Inversora alleges that EP-Holding a.d. is either EP-Holding or that EP-Holding a.d. is EP-Holding's successor-in-interest and, as such, EP-Holding a.d. is the Judgment Debtor. Inversora Am. Answer ¶¶ 4, 27. (This ignores the fact that the underlying contract was apparently with EP-Holding Guinee.) Inversora alleges EP-Holding a.d. was formed shortly after the dissolution of EP-Holding in 1998. *Id.* at ¶¶ 28–33. Inversora further claims that EP-Holding a.d. has either an interest in the payments owed to EP-Hidro or that EP-Hidro and EP-Holding a.d. are alter-egos of one another. *Id.* at ¶¶ 4, 27. Inversora alleges that the Judgment Debtor dominates control of EP-Hidro and owns at least 94.84% of EP-Hidro's equity. *Id.* at ¶ 4.

Without limited discovery, I have no basis on which to decide these issues. The question of EP-Holding a.d.'s interest in EP-Hidro's property revisits the same issue that was before me in Energo's first motion to dismiss.[7] Similarly, Inversora's argument that EP-Holding a.d., as either

---

[6] At oral argument, Energo cited *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991), for the proposition that the Court does not have personal jurisdiction over EP-Holding a.d. because the 2003 suit by EP-Holding a.d. and this interpleader action are unrelated. I need not determine now whether the "unrelated lawsuit in state court" in *Klinghoffer* necessitates a finding here that the 2003 complaint to vacate the 1996 judgment is unrelated to the present interpleader action that is premised on the same 1996 judgment.

[7] *See MWH Int'l, Inc.*, 2012 WL 12886, at \*2 ("In general, judgments cannot be satisfied with assets of third parties against whom the judgment does not run. In a proceeding under CPLR § 5225, a judgment creditor may seek property in which the judgment debtor has an interest. In such a proceeding, the Court performs a two-step analysis to determine the ownership of the property in question. First, it must be shown that the judgment debtor has an interest in the property the creditor seeks to reach. Second, the Court must find that either the judgment debtor is entitled to the possession of such property, or that the judgment creditor's rights to the property are superior." (internal citations and quotation marks omitted)).

EP-Holding or the successor-in-interest to EP-Holding, is the alter-ego of EP-Hidro depends on much of the same jurisdictional discovery already required. "Alter-ego liability attaches if the following elements are established: (1) control amounting to complete domination with respect to the transaction attacked; (2) use of such control to perpetrate a fraud or wrong, including a violation of a positive legal duty; and (3) the control and breach of duty must proximately cause the injury complained of." *Network Enters., Inc. v. APBA Offshore Prods., Inc*., No. 01-11765(CSH), 2003 WL 124521, at \*2 (S.D.N.Y. Jan. 15, 2003) (internal quotation marks omitted). Where, as here, discovery has not yet taken place to augment the factual record, the complainant's factual allegations to support an alter-ego theory of liability should be treated as true and all reasonable inferences must be drawn in the complainant's favor. *Id*. at \*3. Determining whether Inversora has a claim under either theory of liability depends upon the corporate structure and inner-workings of the Energo entities.

## IV.     Inversora's Capacity to Sue

The Energo entities allege that pursuant to the New Jersey Corporation Act, Inversora, as a dissolved New Jersey company, lacks the capacity to bring suit to enforce the 16-year-old Judgment. The pertinent sections of the New Jersey business law state: "Except as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs." N.J. Stat. Ann. § 14A:12-9(1) (West 2012). "[T]he corporation may sue and be sued in its corporate name . . . as if dissolution had not occurred[.]" *Id.* § 14A:12-9(2)(e). Inversora concedes that it is a dissolved corporation—its certificate of incorporation was revoked after it failed to file annual reports for two consecutive years—but it does not concede that its affairs are fully "wound up." Inversora Opp'n 8. "It is undisputed that a corporation in [the process of winding up its affairs] can sue and be sued. Once the corporation finishes that process, it ceases to exist. A corporation may not be sued in perpetuity." *Global Landfill Agreement Grp. v. 280 Dev. Corp.*, 992 F. Supp. 692, 695 (D.N.J. 1998). Energo misinterprets the only case it cites, *Needle v. Byram Cove, Inc.*, 2010 WL 2555710, (N.J. Super. Ct. App. Div., June 24, 2010), to support its assertion that a dissolved New Jersey corporation must first reinstate its corporate status before it can bring suit. In *Needle*, a dissolved corporation sought to contemporaneously reinstate its corporate status and enforce an earlier judgment. *Id.* at \*9. Because the dissolved corporation was not winding up its affairs, the *Needle* Court ordered that the enforcement of the judgment await the reinstatement of the

corporation's status. *Id.* I cannot find cases that support the proposition that Inversora is time-barred from seeking enforcement of the 1996 Judgment.

Energo further claims that New York's Business Corporation Law § 1312 prohibits Inversora from filing suit in this Court. Energo Supp. 8. The pertinent section of this Act states: "A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state. . . ." N.Y. Bus. Corp. § 1312(a). Both Energo and Inversora look to *Netherlands Shipmortgage Corp., LTD v. Madias*, 717 F.2d 731 (2d Cir. 1983). In *Netherlands,* the Second Circuit noted that in order for the Act to apply, "the intrastate activity of a foreign corporation [must] be permanent, continuous, and regular for it to be doing business in New York." *Id.* at 736. Both parties concede that Inversora's only footprint in New York comprises a P.O. Box in Millbrook, New York. Inversora Opp'n 10; Energo Supp. 8.

Inversora responds by arguing that Energo is prohibited from raising arguments on this second motion to dismiss that it could have brought in the first motion to dismiss but did not. Inversora Opp'n 6–7. This is yet another issue that may be obviated by the discovery into Energo's corporate structure, and I need not resolve it now.

## V.     Motion to Vacate the 1996 Judgment as Void

Energo claims that the Judgment underlying the current action is void because the New Jersey Court that entered the Judgment lacked personal jurisdiction over EP-Holding. Energo Supp. 10–11. Despite failing to so move here, Energo argues that a motion pursuant to FRCP 60(b) raised due to a lack of personal jurisdiction is not time-barred and does not require a meritorious defense to prevail. *Id.* While motions pursuant to FRCP 60(b) must be made within a "reasonable time," the Second Circuit "has been exceedingly lenient in defining the term reasonable time, with respect to voidness challenges. . . . [A] motion to vacate a default judgment as void may be made at any time." *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123–24 (2d Cir. 2008) (internal quotation marks omitted); *see Orix Fin. Services v. Phipps*, No. 91 CV 2523 (RPP), 2009 WL 2486012 (S.D.N.Y. Aug. 14, 2009) (noting that a motion to vacate a judgment pursuant to FRCP 60(b)(4), although made 17 years after the original judgment, was still timely). Inversora notes that Energo did not formally move pursuant to FRCP 60(b) and that, even if it had, this Court is not the proper forum to adjudicate such a claim. Inversora cites *F.C.V., Inc. v. Sterling Nat'l Bank*, 652 F. Supp. 2d 928, 939 (N.D. Ill. 2009), to support its assertion that only

the forum that rendered judgment should consider a related FRCP 60(b) motion. This assertion is based on the familiarity of the facts and other circumstances by the court that rendered judgment, but this general rule is not determinative here.

Where the FRCP 60(b) motion is for relief from a default judgment, the assumptions about a rendering court's qualifications no longer apply. Where the defendant does not appear to contest jurisdiction and the court does not receive evidence or make findings in the matter except on the issue of damages, the court of rendition is no more familiar with the factual situation than is the court of registration. *Covington Indus., Inc. v. Resintex A. G.*, 629 F.2d 730, 733 (2d Cir. 1980). "While the original court's jurisdiction is presumptively valid, if the issue of jurisdiction has not previously been litigated it may be raised in the enforcing court." *Id.* at 732.

Aside from stating that the New Jersey District Court did not have personal jurisdiction to render the Judgment and that Inversora does not adequately refute this allegation, Energo does not offer this Court any factual basis to properly assess whether the New Jersey Court lacked personal jurisdiction over the Judgment Debtor. Allocating the burden among parties in FRCP 60(b)(4) challenges appears to vary on the circumstances surrounding the motion. In general, "[t]he burden of proof [in FRCP 60(b)(4) motions that attack the personal jurisdiction of a rendering court] is properly placed on the party asserting that jurisdiction existed." *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986). However, "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). In order for this Court to appropriately address this claim, Energo must move formally pursuant to Rule 60(b)(4) and provide a basis for its personal jurisdiction challenge. At oral argument, Energo requested that my jurisdictional discovery order be expanded to include discovery into the 1996 judgment, and I am persuaded that such discovery is appropriate at this time.

### Conclusion

I have considered the parties' other arguments and find them without merit or not capable of resolution at this time. The Energo motions are DENIED without prejudice. The stay on discovery is lifted, and Inversora may proceed with the limited discovery I ordered in January, which is hereby expanded to include EP-Holding a.d., and Energo may at the same time conduct

discovery of the basis for personal jurisdiction over EP-Holding in the 1996 judgment. The parties shall have until September 15, 2012, to complete this discovery. Should Inversora anticipate that this limited discovery will be inadequate to address the few narrow issues discussed above, Inversora shall by August 15, 2012, submit a letter of no more than two pages requesting a change to my discovery order. A pretrial conference will be held on October 11, 2012, at 2:45 P.M. The Clerk of Court is instructed to close the motion.

**SO ORDERED.**

Date: _8/3/12_
New York, New York

_____
**HAROLD BAER, JR.**
**United States District Judge**

12